COLLEEN HANSEN, EXECUTRIX (ESTATE OF
RICHARD P. HANSEN), ET AL. *v.* OHIO
CASUALTY INSURANCE COMPANY
(15535)

Borden, Berdon, Norcott, Palmer and McDonald, Js.

Argued November 5—officially released December 31, 1996

*Daniel P. Scapellati*, with whom, on the brief, was *John W. Lemega*, for the appellant (defendant).

*Susan M. Cormier*, with whom were *Louise R. Zito*, *Kenneth J. Bartschi* and, on the brief, *Wesley W. Horton*, for the appellee (plaintiff).

BERDON, J. The sole issue in this appeal is whether, under the facts of this case, the estate of the decedent, Richard P. Hansen,[1] is entitled to underinsured motorist benefits, as a covered insured, pursuant to a garage insurance policy (policy) issued by the defendant insurer to a closely held corporation owned and operated by the decedent and his wife.[2] The plaintiff, Colleen Hansen, as executrix of the estate of her deceased husband, and in her individual capacity,[3] sought to recover underinsured motorist benefits as a result of the death of her husband under the policy issued by the defendant, Ohio Casualty Insurance Company, to West Wharf Garage, Inc., the corporation owned by the plaintiff and the decedent. In accordance with the terms of the policy, the parties submitted to arbitration. They agreed to have the arbitrators first determine the threshold issue of coverage. A majority of the panel of three arbitrators determined that the plaintiff's decedent was not

---

[1] See footnote 3.

[2] Because of the resolution of this appeal, we need not address the plaintiff's additional argument that the arbitrators improperly failed to allow evidence to be admitted regarding the circumstances surrounding the purchase of the policy and of the plaintiff's expectations.

[3] The plaintiff's claim, in her individual capacity, for bystander emotional distress; see *Clohessy* v. *Bachelor*, 237 Conn. 31, 675 A.2d 852 (1996); is based on § B.4 of the uninsured motorist endorsement of the policy, which provides that an insured includes "[a]nyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.'" Apparently, the plaintiff brought this claim under the theory that if her decedent fell within the coverage under the uninsured motorist endorsement as an insured, then she could also pursue her derivative claim. The arbitration panel and the trial court addressed the two claims together, with no separate analysis of the plaintiff's derivative claim. We do likewise.

covered under the underinsured motorist endorsement to the policy.

Upon application of the plaintiff,[4] the trial court concluded that there was coverage and vacated[5] the arbitration panel's decision. The trial court relied heavily on the reasoning of our previous decision in *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 622 A.2d 545 (1993). In short, the trial court concluded that "any reference to family members in a business policy issued to a corporation is ambiguous in light of the *Ceci* decision . . . ." The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We now affirm the judgment of the trial court.

The undisputed facts are as follows. The plaintiff and the decedent were the sole shareholders of West Wharf Garage, Inc., a closely held corporation (corporation). The corporation was an automobile repair business operated by the plaintiff and the decedent. The decedent was the president and sole paid employee of the corporation, working as a mechanic and the manager of the garage. The plaintiff was the secretary and trea-

---

[4] The plaintiff's application was made both in her individual capacity and as executrix of the estate of the decedent.

[5] General Statutes § 52-418 provides in pertinent part: "Vacating award. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. . . ."

surer of the corporation, and she also worked, without salary, as the corporation's bookkeeper. The plaintiff also participated in the management of the daily affairs of the corporation. The defendant issued to the corporation a business automobile insurance policy, otherwise known as a garage policy, to cover its automobile repair business. The policy covered two wreckers owned by the corporation and three vehicle registration repair plates. The policy also contained an uninsured/underinsured motorist endorsement (uninsured motorist endorsement). On February 27, 1993, the decedent, while vacationing in Vermont with the plaintiff, was killed while riding a snowmobile that collided with an underinsured motor vehicle. The decedent and the plaintiff had traveled on their vacation to Vermont in a vehicle utilizing one of the repair plates. Following the accident, the estate of the decedent recovered the policy limits of the tortfeasor's motor vehicle insurance, thereby satisfying the exhaustion of liability coverage requirements. See *General Accident Ins. Co.* v. *Wheeler*, 221 Conn. 206, 603 A.2d 385 (1992). Subsequently, through the arbitration proceeding, the plaintiff, individually and in her capacity as executrix of the decedent's estate, sought underinsured motorist benefits from the defendant.

The policy issued to the corporation by the defendant provided in pertinent part:

"GARAGE COVERAGE FORM . . . .

"Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations. . . .

"SECTION VI—DEFINITIONS . . . .

"C. 'Bodily injury' means bodily injury, sickness or disease sustained by a person including death resulting from any of these. . . ."

The uninsured motorists endorsement of the policy provided in pertinent part:

"CONNECTICUT UNINSURED MOTORISTS COVERAGE . . . .

"For a covered 'auto' licensed or principally garaged, or 'garage operations' conducted in, Connecticut, this endorsement modifies insurance provided under the following . . . .

"GARAGE COVERAGE FORM . . . .

"A. COVERAGE

"1. We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.' *The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.'* . . .

"B. WHO IS AN INSURED

"1. *You.*

"2. *If you are an individual, any 'family member.'*

"3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.

"4. Anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.'

"C. EXCLUSIONS

"This insurance does not apply to any of the following . . .

"3. *'Bodily injury' sustained by you or any 'family member'* while 'occupying' or struck as a pedestrian by an 'uninsured motor vehicle' that you own. . . .

"F. ADDITIONAL DEFINITIONS . . . .

"1. *'Family member'* means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

"2. 'Occupying' means in, upon, getting in, on, out or off. . . ." (Emphasis added.)

In this case, the named insured in the declarations of the basic policy was the corporation. Therefore, the plaintiff's decedent technically did not fall within § B.1 of the uninsured motorist endorsement referring to "You," if read solely in relation to who is the named insured in the basic policy. See *Testone* v. *Allstate Ins. Co.*, 165 Conn. 126, 129–30, 328 A.2d 686 (1973). It is undisputed that the plaintiff's decedent did not fall within the provisions of § B.3 of the uninsured motorist endorsement as a designated insured because he was not "occupying," as that term is defined in § F.2 of the policy, a covered vehicle at the time of his fatal accident. The plaintiff essentially argues that the individual oriented and family oriented language throughout the uninsured motorist endorsement, and elsewhere in the policy, renders the policy ambiguous and creates uncertainty about who constitutes the "You" covered as an insured under the uninsured motorist endorsement. Therefore, the plaintiff argues that because the policy is ambiguous, it should be construed against the insurer and in favor of coverage for the plaintiff's decedent. We agree.

"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. *Schultz* v. *Hartford Fire Ins. Co.*, 213 Conn. 696, 702, 569 A.2d 1131 (1990). The policy words must be accorded their natural and ordinary meaning. *Kelly* v. *Figueiredo*, 223 Conn. 31, 35, 610 A.2d 1296 (1992). Under well established rules of construction,

any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 375, 593 A.2d 498 (1991). This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous. *Kelly* v. *Figueiredo*, supra, 37. Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. Id." (Internal quotation marks omitted.) *Stephan* v. *Pennsylvania General Ins. Co.*, 224 Conn. 758, 763–64, 621 A.2d 258 (1993). "[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." *Aetna Life & Casualty Co.* v. *Bulaong*, 218 Conn. 51, 58, 588 A.2d 138 (1991).

We view this case as a sequel to *Ceci* v. *National Indemnity Co.*, supra, 225 Conn. 173, in which we considered the effect of a "family member" clause in an uninsured motorist endorsement issued to a corporation on the coverage for the plaintiff, where the plaintiff could not be a family member of the corporation. Although the issue in this case does not solely revolve around family member language, we believe that the starting point here is that "[b]ecause corporations do not have families, uninsured motorist endorsements containing family member language should not be appended to business automobile liability insurance policies. If they are, then, in keeping with the consumer oriented spirit of the rules of insurance policy construction, the claimed ambiguity should be construed from the standpoint of the reasonable layperson in the position of the insured and not according to the interpretation of trained underwriters." Id., 174–75. We believe that the same approach is warranted for language oriented toward individuals.

As we indicated in *Ceci*, "[i]t is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view. . . . The premise behind the rule is simple. The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests. . . . A further, related rationale for the rule is that [s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter." (Citations omitted; internal quotation marks omitted.) Id., 173–74; see also B. Ostrager & T. Newman, Insurance Coverage Disputes (8th Ed. 1995) § 1.03 [b] [1], p. 13 ("[t]he insurer 'has the responsibility of making its intention clearly known' "). "In general, courts will protect the reasonable expectations of applicants, insureds, and intended beneficiaries regarding the coverage afforded by insurance contracts . . . ." R. Keeton & A. Widiss, Insurance Law (1988) § 6.3 (a) (3), p. 633. "[E]ven though not often expressed, there has always been an implicit understanding that ambiguities, which in most cases might be resolved in more than just one or the other of two ways, would be resolved favorably to the insured's claim only if a reasonable person in his position would have expected coverage." R. Keeton, Insurance Law (1971) § 6.3 (a), p. 352.

This rule of insurance construction dictating that ambiguities be resolved in favor of the insured is some-

times referred to as the contra-insurer rule. See B. Ostrager & T. Newman, supra, § 1.03 [b] [1], pp. 13–14. "[T]he contra-insurer rule is based upon the doctrine of contra proferentem, which literally means 'against the offeror' or drafter of the language. See generally Restatement (Second) of Contracts § 206 (1981) . . . ." B. Ostrager & T. Newman, supra, p. 14; see also *Gaunt* v. *John Hancock Mutual Life Ins. Co.*, 160 F.2d 599, 602 (2d Cir.), cert. denied, 331 U.S. 849, 67 S. Ct. 1736, 91 L. Ed. 1858 (1947) (in Connecticut, as elsewhere, "the canon contra proferentem is more rigorously applied in insurance than in other contracts").

In the present case, it is obvious that the defendant utilized an endorsement that was designed to cover individuals as well as corporations. "Such endorsements are worded in terms of 'family member,' 'spouses' and 'relatives,' which language may have little applicability in the business auto policy context, wherein the named insured is often a corporate business entity." J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 2.10, pp. 97–98.

Here, in § B.1, under the caption "WHO IS AN INSURED," the defendant provided that "You" are an insured. In addition, the defendant also provided in § B.2, under the caption "WHO IS AN INSURED," that "[i]f you are an individual, any 'family member.' " The defendant argues that the plaintiff's decedent did not fall within those two types of insureds because the policy clearly and unambiguously provided that "You" referred only to the corporation and, since it was not an individual, the corporation could not have family members. We do not agree that the policy was clear and unambiguous.

"When interpreting [an insurance policy], we must look at the [policy] as a whole, consider all relevant

portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." *O'Brien* v. *United States Fidelity & Guaranty Co.*, 235 Conn. 837, 842–43, 669 A.2d 1221 (1996). Using this approach, we find several clauses to be ambiguous and, therefore, potentially misleading and confusing. First, the designation of "You" as the insured in § B.1 of the uninsured motorist endorsement is nonsensical because a corporation cannot be compensated for "bodily injury," which is the subject matter of the coverage. Laypersons reading the coverage in relationship to the bodily injury coverage could have concluded that the "You" in the policy was referring to the shareholders of this small family owned and operated corporation. This is further highlighted by § C.3 of the endorsement, the "EXCLUSIONS" section, which provides that "[t]his insurance does not apply to any of the following . . . *'[b]odily injury' sustained by you or any 'family member'* while 'occupying' or struck as a pedestrian by an 'uninsured motor vehicle' that you own." (Emphasis added.) In addition, § F.1 of the endorsement specifically provides that " *'[f]amily member'* means a person related to *you* by blood, marriage or adoption who is a resident of your household, including a ward or foster child." (Emphasis added.)

The uninsured motorist coverage under both §§ B.1 and B.2 are inapposite to the situation in which a corporation is issued an uninsured motorist endorsement, but, rather, are consistent with one seeking coverage for shareholders of a family corporation. Although "many insurers have revised both the format and the wording of insurance policies with a view to making them significantly more understandable to the consumer"; R. Keeton & A. Widiss, supra, § 6.3 (a) (4), p. 634; leaving a layperson to sort out the ambiguities and misleading inconsistencies in the present policy "is precisely the problem that the rules of insurance policy construction

were designed to avoid. See General Statutes §§ 38a-297 through 38a-299 (insurance coverage shall be 'readily understandable')." *Ceci* v. *National Indemnity Co.*, supra, 225 Conn. 175. As a matter of law, we hold that the interplay between the provisions in the uninsured motorist endorsement created a situation too misleading to be anything other than ambiguous.

"[I]n some of the coverage disputes involving underinsured motorist insurance, claims have been sustained for individuals on the rationale that when an insurance company elects to use 'family-oriented language' in insurance policies issued to partnerships and corporations, such coverage terms are reasonably susceptible of more than one interpretation and, therefore, they will be construed strictly against the insurer and liberally in favor of the insured." (Internal quotation marks omitted.) 3 A. Widiss, Uninsured and Underinsured Motorist Insurance (2d Ed. 1995) § 33.3, p. 69. "In effect, when a *corporate* or *governmental* entity is identified as the named insured in an insurance policy that uses coverage terms appropriate for coverage issued to *individuals*, courts chastise insurers for employing those forms rather than using coverage terms that are appropriate for insurance policies issued to various types of *businesses* or *governmental* entities." (Emphasis added.) Id., p. 70. We adhere to this reasoning.

Furthermore, if we read the "[i]f you are an individual" language in § B.2 as being unambiguous, as the defendant would have us do, then the provision "You" in § B.1 would be superfluous. This construction, however, would conflict with the canon of construction of insurance policies that "a policy should not be interpreted so as to render any part of it superfluous." *Ceci* v. *National Indemnity Co.*, supra, 225 Conn. 176 (*Borden, J.*, concurring). As noted in *Ceci*, "we have consistently stated that [i]f it is reasonably possible to do so, every provision of an insurance policy must be given operative

effect; *Kelly* v. *Figueiredo*, [supra, 223 Conn. 36] . . . because parties ordinarily do not insert meaningless provisions in their agreements. *Connecticut Co.* v. *Division 425*, 147 Conn. 608, 617, 164 A.2d 413 (1960); *A. M. Larson Co.* v. *Lawlor Ins. Agency, Inc.*, 153 Conn. 618, 622, 220 A.2d 32 (1966)." (Citation omitted; internal quotation marks omitted.) *Ceci* v. *National Indemnity Co.*, supra, 175–76. "[E]ach and every sentence, clause, and word of a contract of insurance should be given operative effect. Since it must be assumed that each word contained in an insurance policy is intended to serve a purpose, every term will be given effect if that can be done by any reasonable construction . . . . A construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent." 2 G. Couch, Insurance (3d Ed. 1995) c. 22, § 22.43, pp. 22-90 through 22-93. Because the policy must be construed against the defendant, the superfluous provisions cannot be read out of the policy. Therefore, we must conclude that the two clauses are clearly irreconcilable and, therefore, render the uninsured motorist endorsement ambiguous. See *Ceci* v. *National Indemnity Co.*, supra, 176–77.

We conclude that the individual oriented language, combined with the family oriented language, interspersed throughout the uninsured motorist endorsement provided to the *corporation* injected confusion and uncertainty into the coverage afforded by the policy. If an insurer uses language that is ambiguous, any uncertainty caused by that ambiguity will be resolved against the insurer. See *Cody* v. *Remington Electric Shavers*, 179 Conn. 494, 497, 427 A.2d 810 (1980). Put simply, the defendant should not have used an uninsured motorist endorsement containing language oriented toward individuals and family members when

the named insured was a corporation. The plaintiff, individually and as executrix of the decedent's estate, is entitled to coverage under the uninsured motorist endorsement.

The judgment is affirmed.

In this opinion the other justices concurred.