[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This action stems from denial of coverage to the plaintiff by an insurer. Plaintiff, Kramer's, Inc. ("Kramer's) alleges negligence on the part of Lester H. Brenner, Inc. ("Brenner"), an insurance broker in obtaining insurance coverage for plaintiffs business.
The complaint was originally in three counts. The first and second counts were directed against the named defendant, First Specialty Insurance Corp. ("First Specialty"). Prior to trial the CT Page 7535 plaintiff and First Specialty reached a settlement and this matter went forward on the third count only, directed at the defendant Brenner. Zirenner answered, denying liability, and by way of special defense, alleging that plaintiff had received full satisfaction of its claim from First Specialty. The plaintiff replied, denying the special defense, and a hearing on the merits was held on January 21, 1998.
 II
On January 6, 1995 and for some time previously, Kramer's was a retail women's clothing and fur store. It's president, Lawrence Liebman, had purchased Kramer's in 1983. During the time of Liebman's ownership, defendant Brenner secured insurance on behalf of Kramer's to meet Kramer's needs, including "furrier's block" insurance and "furrier's customer" insurance. Furrier's customer insurance provided coverage for furs owned by customers and stored by Kramer's on its premises. Furrier's block insurance provided coverage for furs owned by, or consigned to, Kramer's and kept on the premises for sale. The dispute here centers around the furrier's block policy in effect on January 6, 1995.
On January 6, 1995, Kramer's was burglarized and a number of furs were stolen from the premises. Kramer's claimed a loss of seventeen furs, with a wholesale value of thirty six thousand, eight hundred forty dollars ($36,840.00). The stolen furs had been owned by or consigned to Kramer's The furs in question had been left on racks on the floor of the premises after business hours.
By letter dated May 10, 1995, First Specialty denied coverage, stating that Kramer's was "fundamentally in breach of the protective safeguards condition of this policy" by virtue of its failure to keep the stolen furs within a protective enclosure, which First Specialty claimed Kramer's was obligated to do by virtue of Kramer's statements on the proposal form submitted by Kramer's seeking coverage. Both Kramer's and Brenner agree that in fact there was no locked storage requirement contained in the furrier's block component of the policy issued by First Specialty.
 III
Kramer's alleges negligence on the part of Brenner in that Brenner knew or should have known that First Specialty had a CT Page 7536 requirement that furs covered by a furrier's block policy be stored in a "locked storage area" and that Brenner failed to communicate that requirement to Kramer's, with the result that Kramer's suffered a loss when First Specialty denied coverage on the claim in question. Kramer's alleges further that defendant Blenner was aware of Kramer's practice of leaving furs overnight on racks on the floor of the store and took no steps to alert Kramer's that this practice could lead to a denial of coverage in the event of a loss.
 IV
The plaintiff claims Brenner was negligent in that it failed to inform Kramer's, its officers or employees, of the practice of First Specialty in requiring that furs covered under a furrier's block policy be stored in a locked enclosure after hours, and denying coverage for losses suffered when such furs were not so enclosed.
David Katz, a licensed insurance broker, working for Brenner, testified that from 1983 forward, Brenner had obtained insurance coverage for Kramer's from a succession of insurance carriers, including Lloyd's of London, Kemper Insurance Company, and the New Hampshire Insurance Company. Because of Kramer's financial situation, it became difficult to obtain continued coverage. In the spring of 1994, when the New Hampshire Insurance Company declined to continue coverage for Kramer's, Katz obtained the coverage at issue from First Specialty.
Katz testified that policies issued to Kramer's by predecessor carriers had contained a "locked storage" requirement for furs covered by the furrier's block policy; that he had annually reviewed the terms of coverage either with Liebman or Noriko Tokita, an officer and comptroller of Kramer's, including the "locked storage" requirement. Katz testified that he was aware that it was the practice of First Specialty to require a "locked storage enclosure" and to deny coverage for furs not stored in a locked enclosure. Liebman testified that he had never been specifically informed by Katz that furs covered by the furrier's block policy had to be stored in a locked enclosure when the store was closed. The court finds that the plaintiff has failed to establish, by a fair preponderance of the evidence, that Katz, during periodic reviews of the terms and conditions of insurance coverage over a period of eleven years, failed to inform plaintiff, its officers or responsible employees, that the CT Page 7537 furrier's block coverage obtained by Brenner for Kramer's carried with it a locked storage enclosure requirement. The court is persuaded that Kramer's, its officers and employees knew or should have known of an insurance industry practice, reflected in the succession of furrier's block policies covering plaintiff's furs, requiring that furs under such policy be stored in a locked enclosure after hours, and knew or should have known that this was a requirement of the succession of carriers which provided coverage to Kramer's from 1983 forward, Ursini v.Goldman, 118 Conn. 554, 562; New York Life Insurancev. Rigas, 117 Conn. 437, 441.
Nor was Brenner negligent in failing to warn Kramer's that its practice of leaving furs out overnight on racks risked denial of coverage. Once having obtained insurance coverage for a customer, and reviewed its terms and conditions with that customer, an insurance producer, or broker, is under no obligation to exercise continued monitoring of the customer's practices to ensure that customer's compliance with said terms and conditions.
In applying to First Specialty for coverage Kramer's or Brenner, on behalf of Kramer's, submitted to the carrier a "Proposal for Furrier's Customer Policy" and a "Proposal for Furrier's Block Policy". These were incorporated into and form part of the policy issued by First Specialty to Kramer's. The Proposal for Furrier's Customer Policy contains a "storage enclosure" requirement. As indicated, the parties agree the Furrier's Block Proposal does not contain such a requirement.
The court notes there was testimony to the effect that a Proposal for Furrier's Block Policy form was delivered by Katz to Kramer's; that the form contained a "locked storage" requirement; that said form, signed by Tokita, was returned to Katz; that, having lost or mislaid said form, Katz filled out and forwarded to First Specialty the proposal for Furrier's Block Policy, which did not contain a locked storage requirement and which First Specialty incorporated into the policy it issued to Kramer's (Policy No. IM-0-001-639 A) and that Katz did not notify Kramer's of his action. Kramer's alleges that this failure, too, constituted negligence on the part of Brenner. The court finds Katz' action and Katz' failure to notify Kramer's of said action caused no loss to Kramer's.
 V CT Page 7538
The court finds that Brenner and its agent or employee, David Katz, as an insurance producer, owed a duty of care to the plaintiff, Ursini v. Goldman, 118 Conn. 554, 559.
However, the plaintiff has failed to persuade the court, by a fair preponderance of the evidence, that Brenner or Brenner's agent or employee breached that duty of care.
Plaintiff, in its suit against Brenner, does not claim to have relied on the absence of a locked storage requirement in the First Specialty policy in deciding to leave its furs on racks on the store floor the night of the theft. Rather, plaintiff claims that defendant failed ever to inform plaintiff's officers of the existence of such a requirement at any time during which defendant acted as plaintiff's agent in obtaining coverage. As indicated, supra, plaintiff failed to meet its burden of proof on this claim.
Katz' failure to have used a proposal form with a locked storage requirement as a condition appears to have been inadvertent and to have gone unnoticed by First Specialty when it issued its policy incorporating said proposal.
Given the long line of cases establishing that the policy must be construed against the insurer, see, e.g, Hansen v.Ohio Casualty Ins. Co., 239 Conn. 537, 548, plaintiff would seem to have had a viable cause of action against the insurer on denial by the insurer of plaintiff's claim, given the absence of such a requirement. Plaintiff claims a total loss of thirty six thousand, eight hundred forty dollars ($36,840.00). In the course of trial plaintiff's witness testified Kramer's had settled its claim with First Specialty, with First Specialty agreeing to pay the sum of twelve thousand, five hundred dollars ($12,500.00). We do not know how this sum was arrived at, nor what considerations impelled the parties to agree to it. However, plaintiff has failed to establish, by a fair preponderance of the evidence, that the defendant, Brenner, is liable for the difference between the total sum claimed as loss and the settlement amount agreed to by First Specialty.
The plaintiff, Kramer's, Inc., has failed to establish by a fair preponderance of evidence, that the defendant, Lester H. Brenner, Inc. has breached its duty of care toward plaintiff and has failed to establish, by a fair preponderance of the evidence, CT Page 7539 Brenner's liability for any loss suffered by the plaintiff.
Judgment, accordingly, may enter on behalf of the defendant, Lester H. Brenner, Inc.
By the Court, Downey, J.