[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Presently before the court is plaintiff's motion for summary judgment; the motion for summary judgment should be denied.
The plaintiffs, Noel Roche and Arleen Roche, allege that on April 17, 1995, at approximately 5:00 p.m., the plaintiff, Noel CT Page 11234 Roche, was struck by a vehicle being operated by Ruth M. Rizzo [hereinafter "the tortfeasor"] while he was walking in a crosswalk. As a result of this accident, the plaintiff was injured.
The defendant, Hartford Insurance Co., provided uninsured/underinsured motorist coverage to the plaintiff which coverage was in effect at the time of the accident. The plaintiff had a Personal Auto Policy which provided uninsured/underinsured motorist coverage with limits of liability of $250,000 per person/$500,000 per accident. (Plaintiffs' Exhibits A1, A2.) In addition, the plaintiff had a Personal Umbrella Policy which provided supplementary uninsured/underinsured motorist coverage with a limit of liability of $1,000,000. (Plaintiffs' Exhibits A2-A5.)
The plaintiffs and the defendant agree that, at the time of the accident, the tortfeasor had automobile liability insurance with a limit of liability of $300,000. Her insurance company paid $3,381.48 to Lynn Mastrianno for property damage and $296,618.52, the balance of the policy limit, to the plaintiff in full settlement.
The plaintiffs move for summary judgment on the ground that "there is no genuine issue of fact on the issue of coverage as to the First and Second Counts and that therefore they are entitled to judgment as a matter of law." In support, they argue that they "are entitled to $1,250,000.00 less amounts received from the tortfeasor in underinsured motorist coverage" from the defendant. Plaintiffs urge that the $250,000 of coverage and the $1,000,000 of coverage constitute "one unified policy," and that, therefore, there is a total of $1,250,000 of uninsured/underinsured motorist coverage. In the alternative, the plaintiffs argue that "at a minimum [they are] entitled to coverage of $1,000,000.00 less amounts paid by the tortfeasor."
The defendant opposes the plaintiffs' motion for summary judgment, urging that the $250,000 of coverage and $1,000,000 of coverage constitute two separate policies. Additionally, the defendant argues that the tortfeasor was not operating an "underinsured motor vehicle" and that, therefore, there is no coverage under either the primary policy or the umbrella policy.
The court agrees that the tortfeasor was not operating an "underinsured motor vehicle" within the meaning of the policies. CT Page 11235Hansen v. Ohio Casualty Insurance Company, 239 Conn. 537, 542 et seq.
The Insuring Agreement contained in Part C of the Personal Auto Policy (PAP)[1], (Plaintiffs' Exhibit A2), provides: "We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle because of bodily injury: 1. Sustained by an insured; and 2. Caused by accident." (Emphasis added.)
The Insuring Agreement of the Personal Umbrella Policy (PUP) contained in Part II of the Policy Provisions, (Plaintiffs' Exhibit A4), provides: "We will pay on behalf of the insured net loss in excess of the primary limit or the retained limit when no primary policy applies, because of bodily injury, personal injury, or property damage to which this insurance applies, caused by an occurrence." The PUP Policy Provisions further provides in Part II in the section entitled "Exclusions" that "[w]e will not cover any liability arising from: . . . 7. Any claim for Uninsured Motorists or Underinsured Motorists coverage, unless this policy is endorsed to provide such coverage."
It is undisputed by the parties that the PUP was endorsed to provide uninsured/underinsured motorist coverage. This endorsement is entitled "Supplementary Uninsured/Underinsured Motorist Coverage," (Plaintiffs' Exhibit A5). The endorsement contains an insuring agreement which provides: "We will pay damages in excess of the primary limit, which an insured is legally entitled to recover from the owner or operator of anuninsured/underinsured motor vehicle because of bodily injury, caused by accident, subject to the following provisions: 1. Exclusion 7 [see above paragraph] does not apply. 2. The insurance provided by this endorsement is subject to all the terms, conditions, definitions and exclusions of the primary policy. 3. The retained limit does not apply to this coverage. 4. . . . Any amounts otherwise payable for damages under this coverage shall be reduced by all sums: (a) Paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible." (Emphasis added.)
The PUP Policy Provisions define "primary limit" as "the total applicable limits of liability of the primary policy." "Primary policy" is defined as "the underlying policies shown in the Declarations." The Declarations are shown on the form CT Page 11236 entitled "Personal Umbrella Liability Supplemental Contract," (Plaintiffs' Exhibit A4). This form contains a "Schedule of Primary Policies" under which is listed "automobile liability" with limits of liability of $250,000/$500,000/$50,000 and "comprehensive personal liability" with a limit of liability of $400,000. Therefore, when the endorsement refers to the "primary policy" and the "primary limit," it is referring to the Personal Auto Policy (PAP) and its limits of liability of $250,000/$500,000/$50,000.
Neither the PUP Policy Provisions nor the endorsement define "underinsured motor vehicle."[2] However, the endorsement does state that the "insurance provided by this endorsement is subject to all the terms, conditions, definitions and exclusions of the primary policy." As explained above, the primary policy referred to is the PAP. The PAP defines "underinsured motor vehicle" as "a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than
the limit of liability for this coverage." (Emphasis supplied.) "[T]his coverage" refers to the coverage under the PAP for underinsured motorist claims, i.e. $250,000 per person/$500,000 per accident, not the $1,000,000 limit under the PUP. Thus, the term "underinsured motor vehicle" as used in the PUP is made subject to the definition of "underinsured motor vehicle" contained in the PAP.
The plaintiffs and the defendant agree that the tortfeasor in this case, Ruth M. Rizzo, carried automobile liability insurance applicable at the time of the accident with a limit of liability of $300,000. As per the definition of "underinsured motor vehicle" in the PAP, this $300,000 limit must be compared with the $250,000 limit under the PAP, not the $1,000,000 limit under the PUP. Because $300,000 is not less than $250,000, the tortfeasor was not operating an "underinsured motor vehicle" at the time of the accident with the plaintiff.
The insuring agreements under both the primary policy and the excess policy state that the insurance company will pay only those damages and those excess damages, respectively, which the insured is legally entitled to recover "from the owner or operator of an . . . underinsured motor vehicle." (Emphasis added.) Because the tortfeasor was not operating an "underinsured motor vehicle" as defined by the PAP at the time of the accident, neither the primary policy nor the excess policy covers the CT Page 11237 plaintiffs' claim. For this reason, the plaintiffs' motion for summary judgment is denied.
Fracasse, J.