JOURNAL ENTRY AND OPINION
{¶ 1} This is a reconsideration of an appeal from an order of Judge Kenneth R. Callahan that granted summary judgment to the Hartford Insurance Company ("Hartford") on John T. McDonald's claim for uninsured motorist ("UM") benefits under a commercial motor vehicle policy Hartford issued to his employer, Entex Information Services, Inc. ("Entex"). Hartford is a Connecticut company; Entex is a Delaware corporation based in New York. McDonald, an Ohio resident who was employed by Entex in Ohio, claims it was error to apply Connecticut law to the interpretation of the policy and to find that Connecticut law would deny him UM coverage.
 {¶ 2} In a previous opinion we found error in the grant of summary judgment, and reversed and remanded the case. Hartford filed a motion for reconsideration and, while the motion was pending, the Ohio Supreme Court released its decision in Westfield Ins. Co. v. Galatis,[1] which limited the decision in Scott-Pontzer v. Liberty Mut. Fire Ins. Co.[2]
Based on the change in Ohio law, we grant the motion for reconsideration and affirm the judgment.
 {¶ 3} In February of 1999, McDonald, driving his own uninsured car in Portage County, Ohio, was injured in a collision with a car driven by Jammy L. Williamson. He sued Williamson, alleging negligent operation; Donyel Williamson, alleging negligent entrustment; and Hartford, the business auto insurance carrier for Entex, on a UM claim pursuant toScott-Pontzer.
 {¶ 4} Hartford moved for summary judgment, arguing that the policy was not subject to Ohio law because Entex did not own any vehicles registered or principally garaged in Ohio and, therefore, the policy was not "delivered or issued for delivery"[3] in Ohio. McDonald countered that he was entitled to UM coverage under Ohio law, and added that he would also be entitled to UM coverage if Connecticut law applied. Hartford then argued that McDonald would not be entitled to UM coverage under Connecticut law because of a Connecticut statute limiting "stacking" of UM coverage under different policies.
 {¶ 5} The judge granted summary judgment to Hartford after finding that Connecticut law applied and that the policy would not provide UM coverage for McDonald. The judge did not rely on Hartford's arguments but found that, under Connecticut law, McDonald was not entitled to UM coverage as an Entex employee because he was not driving a covered vehicle in the course and scope of his employment. The judge later entered a $400,000 default judgment against the Williamsons and certified the case for appeal under Civ.R. 54(B).[4]
 {¶ 6} McDonald asserts two assignments of error: the first claims the judge erred in applying Connecticut law, and the second claims the judge misapplied that law. We review the grant of summary judgment de novo using the same standard as the trial judge, which requires that we consider the evidence in the light most favorable to the non-moving party to determine whether a material dispute of fact exists.[5]
 APPLICATION OF OHIO AND CONNECTICUT LAW {¶ 7} Before engaging in any choice of law analysis, a court must first determine whether such analysis is necessary. If the competing states would use the same rule of law or would otherwise reach the same result, there is no need to make a choice of law determination because there is no conflict of law.[6] McDonald claims that he would be entitled to UM coverage under Connecticut or Ohio law because Connecticut has addressed the same ambiguity of definition decided in Scott-Pontzer
and has reached the same conclusion.
 {¶ 8} McDonald cannot recover under Ohio law, however, because the Ohio Supreme Court recently limited Scott-Pontzer in Westfield Ins. Co.v. Galatis.[7] Under Westfield Ins. Co., McDonald is not entitled to UM coverage because his loss did not occur in the course of his employment with Entex.[8] Therefore, he can only defeat summary judgment if we find that Connecticut law applies and would not deny him UM coverage.
 {¶ 9} In Ceci v. Natl. Indemn. Co.,[9] the defendant insurer had issued a policy to a corporate entity owned by a single shareholder. The plaintiff-employee, who was also the brother of the sole shareholder, sought UM coverage as a "family member" of a named insured. The policy, however, did not identify anyone other than the corporation as the named insured, and a lower court found the claimant could not recover because a corporation has no family members.[10] The Connecticut Supreme Court, however, rejected this conclusion because such a construction would render the UM endorsement's extension of coverage to "family members" superfluous.[11] The court ruled that the "family member" language rendered the policy ambiguous as to who was insured under the UM endorsement, although it did not specifically find, as the Scott-Pontzer
court did, that the policy was ambiguous in the definition of the term "you."
 {¶ 10} In Hansen v. Ohio Cas. Ins. Co.,[12] the Connecticut Supreme Court extended its reasoning in Ceci to reach another UM claim involving a policy issued to a close corporation. In Hansen, the plaintiff and her deceased husband were the only shareholders of a corporation named as an insured under the defendant's policy, and UM benefits were claimed under an endorsement that again defined those insured as "you." The endorsement's definition differed from that inCeci, however, because coverage was extended to "family members," only "[i]f you are an individual[.]"[13] The court viewed the case as a "sequel" to Ceci and utilized different reasoning because the case did not "solely revolve around family member language."[14] Therefore, the court specifically found that the decedent qualified under the policy's definition of "you."[15]
 {¶ 11} The Hansen court specifically stated that it could not read the language "if you are an individual," as unambiguous because it would render other policy provisions superfluous.[16] The court thus concluded that "the individual oriented language, combined with the family oriented language," combined to create ambiguity within the policy.[17] Hansen's reasoning is extremely similar, if not identical, to that in Scott-Pontzer.
 {¶ 12} In Agosto v. Aetna Cas. Sur. Co.,[18] a companion case to Hansen, the court specifically extended Hansen's reasoning to include employees of organizations that were not close corporations.[19]
In Agosto, the court ruled that the plaintiff's decedent, a Connecticut state employee, was entitled to UM benefits under a policy issued to the state. Although it did not specifically state that the decedent qualified as an insured under the definition of "you," the court stated that he was entitled to UM coverage based upon its reasoning in Hansen.[20]
Furthermore, the facts of Agosto lead to no other rational conclusion, because it is unlikely the court would have found the decedent entitled to UM benefits as a "family member" of the state.
 {¶ 13} Based on the Connecticut Supreme Court's decisions in Ceci,Hansen, and Agosto, we conclude that Connecticut law would reach the same result as the Ohio Supreme Court reached in Scott-Pontzer. Other Connecticut courts have reached the same conclusion. In Scofield v. AIUIns. Co.,[21] a Connecticut judge applied Ceci, Hansen, and Agosto to allow a UM claim by an employee of a pest control company even though the defendant insurer argued that the employee did not qualify as a family member and that Connecticut Supreme Court precedent should be construed as limited to policies issued to closely held corporations. The judge rejected this view, ruling that "the explicit and sweeping holdings" of those cases showed that they were "not limited to their fact patterns."[22] Therefore, our view that Connecticut law is in accord with Scott-Pontzer is supported by Connecticut authority interpreting the same precedents.
 {¶ 14} The summary judgment ruling apparently disregarded Ceci,Hansen, and Agosto altogether, as the judge, based upon a misreading of Connecticut workers' compensation law, found that McDonald would be denied UM coverage because he was not operating a covered vehicle in the course and scope of his employment. All three of the cited Connecticut Supreme Court cases involved such facts, and all three determined that coverage was available. Moreover, Hartford has not sought to uphold the judgment on this ground.
 {¶ 15} Hartford does not attempt to distinguish Ceci, Hansen, andAgosto, but claims that a provision in Connecticut's uninsured motorist statute, Conn.Gen.Stat. 38a-336(d), would prohibit McDonald from seeking UM coverage from Entex because he is entitled only to the UM coverage available under the policy covering the vehicle. Specifically, Hartford refers to language that states:
"If any person insured for uninsured and underinsured motorist coverageis an occupant of an owned vehicle, the uninsured and underinsuredmotorist coverage afforded by the policy covering the vehicle occupied atthe time of the accident shall be the only uninsured and underinsuredmotorist coverage available."
 {¶ 16} However, Hartford has not provided any authority showing that this provision would be applied in cases where there is no policy providing UM coverage for the "owned vehicle," as all of its cited authority concerns cases in which claimants sought UM benefits from a second policy even though a primary insurance policy covered the involved vehicle.[23] Conn.Gen.Stat. 38a-1(15) defines "policy" as a "document * * * purporting to be an enforceable contract, which memorializes in writing some or all of the terms of an insurance contract." Under this definition, McDonald's failure to insure his vehicle would not bar his recovery under Conn.Gen.Stat. 38a-336(d) because that section specifically refers to "the policy," and no policy exists under the applicable definition of the term. Moreover, there is no reason to believe that Connecticut law would penalize McDonald for failing to obtain motor vehicle insurance for his Ohio vehicle; Connecticut law, similar to Ohio law, does not require motor vehicle insurance, but "security," which can be provided by other means.[24]
 {¶ 17} Hartford also claims McDonald is not entitled to UM coverage under either Connecticut or Ohio law because he was not operating a vehicle covered under the policy's UM provisions. The Entex policy contains a "covered auto designation" for UM coverage that includes "only those `autos' you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage." If Connecticut law is applied, however, the designation is irrelevant because McDonald's UM coverage arises by operation of law under Conn.Gen.Stat. 38a-334 and 38a-336, and the terms of such coverage are set forth in Connecticut insurance regulations. When coverage arises by operation of law, permissible exclusions such as that in Conn.Gen.Stat. 38a-336(a)(1)(B) are inapplicable because the insurer's failure to include UM coverage in the policy's terms also prevents reliance on exclusions that might have been asserted in the absent coverage.
 {¶ 18} Because neither the covered auto designation nor Conn.Gen.Stat. 38a-336(d) denies McDonald UM coverage under the Entex policy, he is entitled to coverage under Connecticut law. Because there is a conflict between the results of applying Connecticut and Ohio law, we must determine which state's law applies.
 CHOICE OF LAW DETERMINATION {¶ 19} When there is a dispute over which state law governs insurance policy provisions, we apply the choice of law rules for contracts under the Restatement of the Law 2d, Conflict of Laws, Sections 187 and 188.[25] Because the insurance policy does not make an express choice of law,[26] section 188 is applicable, and states:
"(1) The rights and duties of the parties with respect to an issue incontract are determined by the local law of the state which, with respectto that issue, has the most significant relationship to the transactionand the parties under the principles stated in [section] 6.
 (2) In the absence of an effective choice of law by the parties (see[section] 187), the contacts to be taken into account in applying theprinciples of [section] 6 to determine the law applicable to an issueinclude:
 the place of contracting,
 the place of negotiation of the contract,
 the place of performance,
 the location of the subject matter of the contract, and
 the domicile, residence, nationality, place of incorporation and placeof business of the parties.
 These contacts are to be evaluated according to their relativeimportance with respect to the particular issue.
 (3) If the place of negotiating the contract and the place ofperformance are in the same state, the local law of this state willusually be applied, except as otherwise provided in [sections] 189-199and 203."[27]
 {¶ 20} When applying section 188, however, one does not simply tally up the number of contacts existing for each state; instead, the importance of each particular contact must be assessed with reference to the choice of law principles in section 6 and the contact's "relative importance with respect to the particular issue."[28] Section 6 states:
"(1) A court, subject to constitutional restrictions, will follow astatutory directive of its own state on choice of law.
 (2) When there is no such directive, the factors relevant to the choiceof the applicable rule of law include
 (a)the needs of the interstate and international systems,
 (b) the relevant policies of the forum,
 (c) the relevant policies of other interested states and the relativeinterests of those states in the determination of the particular issue,
 (d) the protection of justified expectations,
 (e) the basic policies underlying the particular field of law,
 (f) certainty, predictability and uniformity of result, and
 (g) ease in the determination and application of the law to beapplied."[29]
 {¶ 21} Because Section 6(2)(g) of the Second Restatement includes "ease in the determination and application of the law to be applied" as a choice of law consideration, a perceived indeterminacy in Connecticut law favors the application of Ohio law. Furthermore, McDonald's residence and car registration in Ohio are significant contacts under Ohayon v. SafecoIns. Co. of Illinois, supra, which found that, due to the nature of insurance policies, the "principal location of the insured risk"[30] is a critical consideration in determining the parties' expectations concerning which state's law will apply. The court concluded that this location was the same as the place where the vehicle was registered and principally garaged and that "[t]he principal location of the insured risk described in Section 193 neatly corresponds with one of Section 188's enumerated factors — the location of the subject matter of the contract."[31]
 {¶ 22} Ohayon's focus on the "site of the insured risk" points toward application of Ohio law, and the policy's nationwide coverage defeats the claim that the Connecticut contacts are significant to this case. Hartford's Connecticut residence is insignificant because the policy expressly contemplates the application of several state's laws. Similarly, the negotiation and execution of the policy in Connecticut are insignificant because nothing in the policy's terms indicates that Hartford believed Connecticut law would apply to the policy generally. Where nationwide coverage is provided, the policy's legitimate expectation is that the site of the insured risk is more significant than the insurer's residence or the place of negotiation. When a large insurer issues a policy designed to apply nationwide, it has no legitimate expectation that the law of its residence will apply in other states.[32]
 {¶ 23} In Misseldine v. Progressive Cas. Ins. Co.,[33] the appellant claimed that Ohio law should apply because it was the place of negotiation and execution of the contract[34] but the court rejected the argument because, based on Ohayon, it was more important that the insurance policy was issued for vehicles registered and garaged in Hawaii.[35] Just as Hawaii's legislature intended its UM statute to apply to vehicles registered or principally garaged in its state, R.C.3937.18 is evidence of Ohio's "overriding public policy interest" in having its law apply to vehicles registered or garaged in this state.[36]
Connecticut law reflects the same policy because its automobile insurance statutes also apply only to vehicles registered or principally garaged in that state.[37] Therefore, the location of McDonald and his car[38]
are significant factors pointing toward application of Ohio law, and Ohio law should be applied.
 {¶ 24} As we have seen, however, McDonald is not entitled to coverage under Ohio law, and Hartford is entitled to summary judgment even though the judge erred in applying Connecticut law. We have the authority to affirm the judgment on grounds other than those relied upon by the judge.[39] Therefore, the assignments of error are overruled, albeit on other grounds.
 CONCLUSION {¶ 25} The parties presented the judge with a choice between applying Ohio law or Connecticut law, and the Second Restatement's choice of law principles show that Ohio's contacts are more significant than those of Connecticut. Therefore, as between Ohio and Connecticut, Ohio's law should be applied, and McDonald is not entitled to UM coverage under that law.
 {¶ 26} The judgment is affirmed.
Judgment affirmed.
Patricia A. Blackmon, J., concurs.
 Michael J. Corrigan, P.J., concurs in part and dissents in part(see separate concurring and dissenting opinion).
[1] 100 Ohio St.3d 216, 2003-Ohio-5849.
[2] 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116.
[3] R.C. 3937.18(A).
[4] Apparently in order to preserve John Doe claims.
[5] Civ.R. 56(C); Stephens v. A-Able Rents Co. (1995),101 Ohio App.3d 20, 26, 654 N.E.2d 1315.
[6] Akro-Plastics v. Drake Indus. (1996), 115 Ohio App.3d 221, 224,685 N.E.2d 246, citing 1 Restatement of the Law 2d, Conflict of Laws (1971) 2, Section 1, comment b.
[7] 100 Ohio St.3d 216, 2003-Ohio-5849.
[8] Id., paragraph two of the syllabus.
[9] (1993), 225 Conn. 165, 622 A.2d 545.
[10] Id. at 167-168.
[11] Id. at 173-175.
[12] (1996), 239 Conn. 537, 687 A.2d 1262.
[13] Id. at 541; cf. Ceci, 225 Conn. at 171.
[14] Hansen, 239 Conn. at 543.
[15] Id. at 547-548.
[16] Hansen, 239 Conn. at 547.
[17] Id. at 548.
[18] (1996), 239 Conn. 549, 687 A.2d 1267.
[19] Id. at 551-552.
[20] Id. at 552.
[21] (Mar. 4, 2002), Conn. Super. Ct., Danbury Dist., No. CV000339294S.
[22] Id.
[23] Timmons v. Am. States Ins. Co. (June 22, 1998), Conn. Super. Ct., New London Dist., No. 113905; Fuller v. S. Carolina Farm Bur. (Dec. 16, 1998), Conn. Super. Ct., New Haven Dist., No. CV 970400737S.
[24] Conn.Gen.Stat. 38a-371.
[25] Ohayon v. Safeco Ins. Co. of Illinois, 91 Ohio St.3d 474,2001-Ohio-100, 747 N.E.2d 206, paragraph two of the syllabus.
[26] See 1 Restatement of the Law 2d, Conflict of Laws (1971) 561, Section 187.
[27] Id. at 575, Section 188.
[28] Id., Section 188(2).
[29] Id. at 10, Section 6.
[30] Ohayon, 91 Ohio St.3d at 479, quoting 1 Restatement of the Law 2d, Conflict of Laws (1971) 610, Section 193.
[31] Id. at 480.
[32] Jocek v. Nationwide Mut. Fire Ins. Co., supra.
[33] Cuyahoga App. No. 81770, 2003-Ohio-1359.
[34] Id. at ¶ 10.
[35] Id. at ¶ 47-49.
[36] See Misseldine, supra, ¶ 49.
[37] Conn.Gen.Stat.Ann. 38a-334.
[38] The site of the accident is not part of this analysis; In this case Ohio would still be the site of the insured risk even if the accident had occurred in another state.
[39] Joyce v. Gen. Motors Corp. (1990), 49 Ohio St.3d 93, 96,551 N.E.2d 172.