JOHN A. GOMES *v.* MASSACHUSETTS BAY
INSURANCE COMPANY ET AL.
(AC 24409)

Lavery, C. J., and Schaller and DiPentima, Js.

Argued October 18, 2004—officially released February 15, 2005

*Matthew E. Auger*, with whom, on the brief, was *Susan M. Phillips*, for the appellant (plaintiff).

*Daniel P. Scapellati*, with whom, on the brief, was *Jude Francois*, for the appellee (named defendant).

*Opinion*

SCHALLER, J. The plaintiff, John A. Gomes, appeals from the summary judgment rendered by the trial court in favor of the defendant, Massachusetts Bay Insurance

Company.[1] On appeal, the plaintiff claims that the court improperly concluded that he was not entitled to coverage under the underinsured motorist policy endorsement issued by the defendant. Specifically, the plaintiff claims that the court improperly (1) construed General Statutes § 38a-336 (f) as limiting underinsured motorist coverage to those employees of a named insured who are injured while "occupying" a covered motor vehicle, rather than construing it to require such coverage to any person insured under the liability portion of the policy, (2) concluded that the exception to the workers' compensation exclusivity rule provided by § 38a-336 (f) does not apply to him because he was not "occupying" a covered motor vehicle within the meaning of the statute and (3) failed to conclude that because he was a named insured under his employer's policy, he was not barred from collecting underinsured motorist coverage by the workers' compensation exclusivity provision. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal.[2] In his complaint, the plaintiff alleged that he was injured on January 11, 2001, while working in his capacity as a volunteer fire policeman for the Pawcatuck fire district (district). Specifically, the plaintiff alleged that he responded to an emergency call, parked his vehicle at a nearby intersection and began directing traffic to carry out his assigned duties. He further alleged that while standing in the middle of the road directing traffic, he was struck from behind by a vehicle driven by the tortfeasor, Stanley

[1] The plaintiff also named Allstate Insurance Company as a defendant, but it was not a party to the motion for summary judgment that is the subject of this appeal. Accordingly, the term "defendant" refers only to Massachusetts Bay Insurance Company.

[2] "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Morris* v. *Congdon*, 85 Conn. App. 555, 558, 858 A.2d 279 (2004), cert. granted on other grounds, 272 Conn. 913, 866 A.2d 1284 (2005).

Prachniak, and was seriously injured. The plaintiff applied for and received workers' compensation benefits from the district for his injuries. The plaintiff also recovered $100,000 from Prachniak's insurance carrier for the injuries he sustained. The plaintiff brought the present action to collect on the underinsured motorist coverage provided by a policy issued to him by Allstate Insurance Company and by a policy issued to the district by the defendant.

On January 28, 2003, the defendant moved for summary judgment, claiming that the plaintiff, as a matter of law, was not entitled to underinsured motorist coverage under the defendant's policy. In support of its motion, the defendant argued that General Statutes § 31-284 (a), the workers' compensation exclusivity provision, limited the plaintiff to the remedies provided by the Workers' Compensation Act, General Statutes § 31-275 et seq.[3] The defendant further argued that the underinsured motorist coverage exception to the workers' compensation exclusivity provision provided by § 38a-336 (f) was inapplicable to the plaintiff because he was not occupying a covered motor vehicle at the time of the accident.[4]

The plaintiff objected to the defendant's motion and argued that when interpreted in light of legislative

---

[3] General Statutes § 31-284 (a) provides in relevant part: "All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

[4] General Statutes § 38a-336 (f) provides: "Notwithstanding subsection (a) of section 31-284, an employee of a named insured injured while occupying a covered motor vehicle in the course of employment shall be covered by such insured's otherwise applicable uninsured and underinsured motorist coverage."

intent, the exception provided by § 38a-336 (f) was applicable regardless of whether he was occupying a covered vehicle at the time of the accident. In the alternative, the plaintiff argued that the exception was applicable because he was occupying or using a covered vehicle at the time of the accident. In addition to these arguments, at the hearing on the motion for summary judgment, the plaintiff argued that pursuant to *Agosto* v. *Aetna Casualty & Surety Co.*, 239 Conn. 549, 687 A.2d 1267 (1996), and *Hansen* v. *Ohio Casualty Ins. Co.*, 239 Conn. 537, 687 A.2d 1262 (1996), the terms of the uninsured and underinsured motorist endorsement were ambiguous and that, therefore, the policy must be construed to provide coverage regardless of whether he was occupying a covered vehicle at the time of the accident.

On June 26, 2003, the court issued a memorandum of decision granting the defendant's motion for summary judgment. The court concluded that the exception to the workers' compensation exclusivity provision provided by § 38a-336 (f) was not applicable because the plaintiff was "in the middle of an intersection directing traffic when struck" and was not occupying a covered vehicle as "defined by the policy to mean 'in, upon, getting in, on, out or off.' " The court, therefore, concluded that the plaintiff's recovery was limited to those remedies provided by the Workers' Compensation Act. The court subsequently rendered judgment in favor of the defendant. On July 10, 2003, the plaintiff filed this appeal.

On July 16, 2003, the plaintiff filed a motion for articulation in which he sought to have the court address his argument that § 38a-336 (f) was applicable regardless of whether he was occupying a covered vehicle at the time of the accident. The court denied the motion. On November 5, 2003, the plaintiff filed a second motion for articulation regarding the reasons for the court's

apparent rejection of the argument based on *Agosto* that he made during the hearing.[5] The plaintiff stated: "In light of the absence of any indication that the trial court addressed [the] *Agosto* argument, the plaintiff requests that an articulation be granted in order to create a proper record for this appeal." On November 13, 2003, the court denied the motion.

Subsequently, the plaintiff filed a motion for review of the court's November 13, 2003 decision denying the motion for articulation.[6] We granted the plaintiff's motion for review and, citing *Agosto*, ordered the court to "articulate whether the plaintiff was entitled to uninsured/underinsured motorist benefits as an insured as opposed to 'as an occupant' of a covered motor vehicle." The order also directed that the articulation include the factual and legal bases for the court's decision.

The court articulated its decision, explaining that, at the time it issued its decision, it had considered the issue before it to be whether the plaintiff was occupying a covered vehicle rather than whether ambiguity of the policy language entitled the plaintiff to coverage. After reviewing *Agosto* and *Hansen*, the court concluded that the policy language was ambiguous and that accordingly, the plaintiff "is entitled to coverage under the uninsured/underinsured motorist coverage policy of the defendant." In the final sentence of its articulation, the court stated that it "therefore, reverses itself and denies the motion for summary judgment."

The defendant filed a motion for review in which it asked this court to vacate the trial court's articulation on the ground that it had exceeded its authority by reversing its prior summary judgment ruling when responding to this court's order for articulation. We granted the motion and ordered stricken the final sen-

---

[5] See Practice Book § 66-5.
[6] See Practice Book § 66-7.

tence of the trial court's articulation reversing its prior ruling.[7] Additional facts will be set forth as necessary.

On appeal, the plaintiff contends that when the court granted the defendant's motion for summary judgment, it improperly concluded that, as a matter of law, the plaintiff was not entitled to coverage under the uninsured and underinsured motorist policy endorsement. Before addressing his specific claims, we set forth the applicable standard of review of a trial court's ruling on a motion for summary judgment. Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See also *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 83, 856 A.2d 372 (2004). "Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003).

In addition, because this appeal involves questions of statutory construction, we set forth our well established principles of statutory interpretation. "The process of statutory interpretation involves a reasoned search for the intention of the legislature." (Internal quotation marks omitted.) *Wasko* v. *Manella*, 269 Conn. 527, 534, 849 A.2d 777 (2004). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relation-

---

[7] Although our order was not explicit, it is well established that an articulation is not an opportunity for the trial court to substitute a prior decision. See *Fantasia* v. *Milford Fastening Systems*, 86 Conn. App. 270, 284, 860 A.2d 779 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005), citing *Koper* v. *Koper*, 17 Conn. App. 480, 484, 553 A.2d 1162 (1989). The remaining portion of the articulation, however, provides the necessary record upon which we review this claim.

ship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z; see also *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 129, 848 A.2d 451 (2004). When we must consider extratextual evidence of the meaning of a statute, we look "to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Wasko* v. *Manella*, supra, 535. Statutory interpretation is a question of law, over which our review is plenary. *Bengtson* v. *Commissioner of Motor Vehicles*, 86 Conn. App. 51, 56, 859 A.2d 967 (2004), cert. denied, 272 Conn. 922, 867 A.2d 837 (2005).

I

The plaintiff claims that the court improperly construed § 38a-336 (f) as limiting underinsured motorist coverage to those employees of a named insured who are injured while "occupying" a covered motor vehicle, rather than construing it to require such coverage to any person insured under the liability portion of the policy. Specifically, the plaintiff contends that a conflict exists between § 38a-336 (a) (1), which mandates uninsured and underinsured motorist coverage for any person insured under the liability portion of an automobile insurance policy, and § 38a-336 (f), which limits such coverage to those employees injured while "occupying" a covered motor vehicle. The plaintiff further contends that an absurd and unworkable result will occur if § 38a-336 (f) is construed as limiting uninsured and underinsured motorist coverage to those employees "occupying" a covered motor vehicle. The plaintiff argues that the conflicting statutes should be harmonized with the public policy underlying mandatory uninsured and

underinsured motorist coverage, by interpreting § 38a-336 (f) as requiring uninsured and underinsured motorist endorsements to provide coverage to *any* person insured under the liability portion of the policy. We disagree.

"As with all issues of statutory interpretation, we look first to the language of the statute." (Internal quotation marks omitted.) *Starks* v. *University of Connecticut*, 270 Conn. 1, 10, 850 A.2d 1013 (2004). Section 38a-336 (f) provides: "Notwithstanding subsection (a) of section 31-284, an employee of a named insured injured while *occupying* a covered motor vehicle in the course of employment shall be covered by such insured's otherwise applicable uninsured and underinsured motorist coverage." (Emphasis added.)

"In determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 42, 792 A.2d 835 (2002). Section 38a-336 (f) provides an exception to the workers' compensation exclusivity provision contained in § 31-284 (a).[8] This "exclusivity rule" provides that the exclusive remedy for workers injured in the course and scope of employment is provided by the Workers' Compensation Act and that the "injured [workers are] therefore barred from bringing, in most cases, common law actions against their employers for job-related injuries whether predicated on common law tort, statute, or contract." A. Sevarino, Connecticut Workers' Compensation After Reforms (3d Ed. 2002) § 4.32.3, p. 521; see also *Mello* v. *Big Y Foods, Inc.*, 265 Conn. 21, 25–26, 826 A.2d 1117 (2003); *Sorban* v. *Sterling Engineering Corp.*, 79 Conn. App. 444, 449, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003).

---

[8] See footnote 3.

The text of § 38a-336 (f) expressly provides an exception to the workers' compensation exclusivity rule contained in § 31-284 (a) by allowing an injured employee to collect benefits from his or her employer's uninsured and underinsured motorist insurance coverage. The text, however, plainly and unambiguously limits the applicability of the exception to those employees injured while *occupying* a covered motor vehicle. "In construing the meaning of a statute . . . courts do not torture words to import ambiguity where the ordinary meaning leaves no room for it . . . ." (Internal quotation marks omitted.) *Hyllen-Davey* v. *Plan & Zoning Commission*, 57 Conn. App. 589, 599, 749 A.2d 682, cert. denied, 253 Conn. 926, 754 A.2d 796 (2000).

The plaintiff contends, however, that construing § 38a-336 (f) according to its plain and unambiguous meaning will lead to the absurd and unworkable result of limiting coverage required by § 38a-336 (a) (1). General Statutes § 38a-336 (a) (1) provides in relevant part: "Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334 . . . *for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles . . . because of bodily injury, including death resulting therefrom. . . ."[9] (Emphasis added.) Thus, by its terms, § 38a-336 (a) (1) requires

---

[9] Section 38a-334-6 of the Regulations of Connecticut State Agencies, entitled "Minimum Provisions for Protection Against Uninsured or Underinsured Motorists," provides in relevant part: "(a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured or underinsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. . . ."

that each automobile liability policy provide uninsured and underinsured motorist coverage to a class of persons that is coextensive with that insured under the liability section of the policy. *Middlesex Ins. Co.* v. *Quinn*, 225 Conn. 257, 267, 622 A.2d 572 (1993).

We are not persuaded that construing § 38a-336 (f) to limit the uninsured and underinsured motorist exception to the workers' compensation exclusivity provision to only those employees injured while occupying a covered vehicle will lead to an absurd or unworkable result. We are mindful that our uninsured and underinsured motorist statute "is remedial in nature and designed to protect people injured by [uninsured and underinsured] motorists . . . [and that] remedial statutes should be construed liberally in favor of those whom the law is intended to protect." (Citations omitted; internal quotation marks omitted.) *Gohel* v. *Allstate Ins. Co.*, 61 Conn. App. 806, 815, 768 A.2d 950 (2001); see also *Willoughby* v. *New Haven*, 254 Conn. 404, 440, 757 A.2d 1083 (2000) (*McDonald, C. J.*, dissenting) (legislative intent underlying uninsured and underinsured motorist statute is to provide protection to broadest number of accident victims).

We must also consider the remedial purpose of the workers' compensation statutory scheme, including the exclusivity provision contained in § 31-284 (a), to which § 38a-336 (f) provides an exception. "The Workers' Compensation Act . . . provides the sole remedy for employees and their dependents for work-related injuries and death. . . . Its purpose is to provide a prompt, efficient, simple and inexpensive procedure for obtaining benefits related to employment." (Citation omitted; internal quotation marks omitted.) *Pietraroia* v. *Northeast Utilities*, 254 Conn. 60, 74, 756 A.2d 845 (2000). "Under the Workers' Compensation Act, both the employer and the employee have relinquished certain rights to obtain other advantages. The employee

no longer has to prove negligence on the part of the employer, but, in return, he has to accept a limited, although certain, recovery. . . . The employer, in turn, guarantees compensation to an injured *employee in return for the exclusivity* of the workers' compensation liability to its employees." (Emphasis added; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 451. "In return for the attempt to guarantee, through workers' compensation insurance, that the injured worker will continue to receive enough income and medical care to enable the injured worker to exist without being a burden to others, the insured employer is released from [other rights and] claims of . . . liability pursuant to [§] 31-284 (a)." A. Sevarino, supra, § 1.03, p. 14. The exclusivity provision contained in § 31-284 (a) manifests a legislative policy decision that a limitation on remedies is an appropriate trade-off for the benefits provided by workers' compensation. *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 220–21, 752 A.2d 1069 (2000).

Prior to the enactment of § 38a-336 (f), our Supreme Court held that the workers' compensation exclusivity provision contained in § 31-284 (a) precluded an employee injured while operating the employer's vehicle in the course of employment from seeking uninsured or underinsured motorist benefits directly from a self-insured employer; *Bouley* v. *Norwich*, 222 Conn. 744, 761, 610 A.2d 1245 (1992); or from the employer's insurance carrier. *CNA Ins. Co.* v. *Colman*, 222 Conn. 769, 773–74, 610 A.2d 1257 (1992). In 1993, the General Assembly legislatively overruled *Bouley* and *Colman* when it enacted § 38a-336 (f). In *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania*, 238 Conn. 285, 679 A.2d 925 (1996), in holding that § 38a-336 (f) applied retroactively, our Supreme Court stated that the statute was "intended to be clarifying legislation and, as such, must be accepted as a declaration of the

legislature's original intent pertaining to the *interplay* between the uninsured motorist provision of . . . § 38a-336 and the workers' compensation exclusivity provision of § 31-284." (Emphasis added.) Id., 291.

Although the plaintiff urges this court to harmonize what he contends to be a continuing conflict between the statutory mandate of uninsured and underinsured coverage and the impact of the workers' compensation exclusivity provision, we decline to do so because we conclude that the legislature appropriately resolved the conflict when it enacted § 38a-336 (f). We presume that the legislature acted with knowledge of the existence and contents of both § 31-284 (a) and § 38a-336 (a) (1). We also presume that it was mindful of the remedial purposes behind both the uninsured and underinsured motorist statute and the Workers' Compensation Act and intended to create a consistent body of law. See *Commissioner* v. *Freedom of Information Commission*, 204 Conn. 609, 621, 529 A.2d 692 (1987) (legislature presumed to enact statutes with knowledge of existing statutes and with intention of creating consistent body of law); see also *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003) (legislature always presumed to have created harmonious and consistent body of law).

On the basis of the language of § 38a-336 (f), it is apparent that the legislature addressed the *interplay* between the uninsured and underinsured motorist statute and the Workers' Compensation Act by providing a *limited* exception to the exclusivity provision. The legislature could have chosen to allow the *Bouley* and *Colman* decisions to stand, or it could have chosen to provide a broader exception to the exclusivity provision. Instead, the legislature chose to harmonize the conflicting statutory schemes by providing an exception, while limiting its applicability to those employees "injured while *occupying* a covered motor vehicle

. . . ."[10] (Emphasis added.) General Statutes § 38a-336 (f). "There is no question that the legislature may, by the language it uses in a statute or a section of a statute, demonstrate its intent that it be limited or restricted." *Taravella* v. *Stanley*, 52 Conn. App. 431, 440, 727 A.2d 727 (1999).

Even if we were to agree with the plaintiff that consideration of extratextual evidence of the meaning of § 38a-336 (f) is warranted in this case, we note that the legislative history the plaintiff presented would be *insufficient* to override the plain and unambiguous text of the statute. The plaintiff argues that the legislature intended to provide coverage for all employees without regard to occupancy and that "use of statutory language suggesting any restriction on that right must be dismissed as accidental." The plaintiff further argues that *absent* any legislative history showing that the legislature expressly intended to limit the applicability of the exception to the exclusivity rule to those employees injured while occupying a covered vehicle, we should ignore the plain and unambiguous text of the statute. These arguments are wholly inconsistent with our well established principles of statutory interpretation.

When searching for the legislative intent of the meaning of a statute, we always begin with an examination of the statutory language because it "is the most important factor to be considered . . . ." *State* v. *Courchesne*, 262 Conn. 537, 563, 816 A.2d 562 (2003); see also General

---

[10] We also note that the legislature's exclusion of those employees injured as nonoccupants from the applicability of the exception to the exclusivity provision and thereby from uninsured and underinsured motorist coverage cannot be viewed as inadvertent in view that our law "has long recognized that [such] coverage may apply to non-occupants of motor vehicles." J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (3d Ed. 2004) § 3.7, p. 256; see also *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 250, 449 A.2d 157 (1982) (insured's status at time of injury "whether passenger, pedestrian, or driver" is irrelevant to recovery under statutorily mandated coverage).

Statutes § 1-2z ("[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself"). When we proceed to consideration of extratextual evidence, our inquiry usually confirms that the legislative intent was accurately expressed in the text of the statute. *State* v. *Courchesne*, supra, 574. Even when extratextual evidence indicates a different intent from that revealed by the plain and unambiguous meaning of the text, we require it to be sufficiently persuasive before we will "conclude that the legislature intended a different meaning" from the text. Id.

As discussed, the text of § 38a-336 (f) is plain and unambiguous and strongly suggests that the legislature intended to limit applicability of the exception to those employees injured while occupying a covered vehicle. We find nothing in the legislative history that persuades us that the legislature intended a meaning contrary to this plain and unambiguous text. We disagree that the legislative history cited by the plaintiff shows an obvious legislative intent that would override the plain meaning of the statute. The legislative history simply reveals discussion regarding the basic purpose of the statute and the reasons underlying its enactment. The mere *absence* of discussion regarding the limitation of the applicability of the exclusivity exception is insufficient to persuade us that the legislature did not intend the plain meaning of the statute. See *Spears* v. *Garcia*, 263 Conn. 22, 29, 818 A.2d 37 (2003) (where legislative history is silent regarding legislature's intent in enacting statute, party cannot rely on it to support interpretation contrary to plain and unambiguous text of statute).

We conclude that the court properly construed § 38a-336 (f) as limiting underinsured motorist coverage to those employees of a named insured who are injured while "occupying" a covered motor vehicle.

## II

We next address the plaintiff's claim that the court improperly concluded that the exception to the workers' compensation exclusivity rule provided by § 38a-336 (f) does not apply to him because he was not "occupying" a covered motor vehicle within the meaning of the statute. Specifically, the plaintiff contends that the term "occupying" should be interpreted broadly in order to implement the purpose of § 38a-336 (f), which he argues is to ensure that employees are not barred from the coverage provided by the uninsured and underinsured motorist statute. Accordingly, the plaintiff argues that the term "occupying" as used in § 38a-336 (f) should be interpreted to include any situation in which an employee is injured while within reasonable physical proximity to a covered motor vehicle and actively engaged in the use of that vehicle. The plaintiff therefore urges this court to reject the "physical contact" test and adopt the "use and proximity" test for determining, on a case-by-case basis, whether the employee was injured while occupying a covered vehicle. We disagree with these arguments.

In its memorandum of decision, when discussing whether the term "occupying" as used in § 38a-336 (f) applied to the plaintiff, the court stated: "Occupying is defined by the policy to mean 'in, upon, getting in, on, out or off.' In the present case the plaintiff was not getting in, or out of a covered vehicle when he was injured . . . . The plaintiff was not physically touching the covered vehicle and, in fact, was in the middle of an intersection directing traffic when struck . . . . These facts are not in dispute. General Statutes § 38a-336 (f) applies only to those injured 'while occupying a covered motor vehicle . . . .' Accordingly, because the plaintiff was not in, upon, getting in, out or off a [covered] motor vehicle at the time of the injury, the defendant's motion for summary judgment is granted."

Presumably because § 38a-336 (f) does not define "occupying," the court, understandably, turned to the policy definition. Although this definition may prove instructive, it does not control our interpretation of the meaning of "occupying" as used in § 38a-336 (f).

When a statute does not define a term, we "look to the common understanding of the term as expressed in the dictionary." (Internal quotation marks omitted.) *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, 270 Conn. 778, 798, 855 A.2d 174 (2004); see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language"); *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 336, 857 A.2d 348 (2004). Webster's Third New International Dictionary provides several definitions of "occupy," including, "to fill up (a place or extent)," and "to hold possession of [something]."

We are also guided by the definition of "occupying" contained in another statute. General Statutes § 38a-363 (c) provides: " 'Occupying' a vehicle means to be in or upon or entering into or alighting from the vehicle."[11] This definition is not controlling because § 38a-336 (f) is not one of the specifically enumerated sections to which § 38a-363 applies. When, however, one statute does not define a term, we may use the definition set forth in another section of the General Statutes concerning the same subject matter to inform our understanding of the term's meaning.[12] See *State* v. *Ramos*, 271 Conn. 785, 792, 860 A.2d 249 (2004).

In addition to the definitions noted, we are guided by our case precedent regarding interpretation of the

---

[11] In addition, General Statutes § 38a-363 (h) provides in relevant part: " 'Pedestrian' means any person not occupying a vehicle . . . ."

[12] "General Statutes §§ 38a-363 and 38a-336 (f) both are contained in chapter 700, which is entitled "Property and Casualty Insurance."

meaning of "occupying" and other related language used in uninsured and underinsured motorist policy provisions. In *Testone* v. *Allstate Ins. Co.*, 165 Conn. 126, 127–29, 328 A.2d 686 (1973), the plaintiff, a tow truck operator injured when a disabled car he was attaching was struck by an uninsured vehicle, attempted to obtain uninsured motorist coverage from the insurer of the tow truck and the insurer of the disabled vehicle. Both policies defined "occupying" as "in or upon or entering into or alighting from" a covered vehicle. (Internal quotation marks omitted.) Id., 131, 134. Our Supreme Court held that the plaintiff was not entitled to uninsured motorist coverage because he was not occupying a covered vehicle as the term was defined in the policies. Id., 132, 134. In concluding that the plaintiff was not occupying the tow truck, the court stated that "[t]he fact that the plaintiff was near his employer's wrecker when injured is of no significance." Id., 131. In concluding that the plaintiff was not occupying the disabled vehicle, the court stated that because "[t]he plaintiff was not in physical contact with the [disabled] vehicle . . . it cannot be said that he was 'upon' that vehicle." Id., 134. When drawing these conclusions, the court cited with approval several cases that have interpreted similar policy language as meaning that "actual physical contact with the insured vehicle affords coverage . . . ." Id., 133.[13]

In *Allstate Ins. Co.* v. *Howe*, 31 Conn. App. 132, 133–34, 623 A.2d 1031, cert. denied, 226 Conn. 911, 628 A.2d 983 (1993), the claimant, who had been a passenger in an insured vehicle when it was involved in a minor accident, was in the process of returning to the vehicle following a discussion with the occupants of the other vehicle when a third vehicle struck the vehicle in which

---

[13] The *Testone* court concluded further that "intent to enter a vehicle alone is not 'entering' a vehicle within the meaning of the insurance policy." *Testone* v. *Allstate Ins. Co.*, supra, 165 Conn. 134.

she had been a passenger, causing it to strike and seriously injure her. The insurance policy defined an "insured person" for purposes of uninsured motorist coverage as "[a]ny person while in, on, getting into or out of" a covered vehicle. Id., 133. In applying this language to the facts of the case, the court expressly relied on the *Testone* court's approval of the premise that actual physical contact with the insured vehicle affords coverage. The court concluded that "[i]t is clear that coverage is compelled under the circumstances of this case where, at the time of the accident, the [claimant] was in physical contact with the car and she intended to and was taking steps to reenter the vehicle after only a brief interruption in her travels related to the operation of the vehicle." Id., 140.

*Testone* and *Allstate Ins. Co.* place Connecticut courts among those of several states that "have predicated determinations about whether an individual was 'occupying' an insured vehicle on there being some 'physical contact' with the vehicle." 1 A. Widiss, Uninsured and Underinsured Motorist Insurance (2d Ed. Rev. 2004) § 5.2, p. 238 (noting that " 'physical contact' test has not been adopted in most states"). We reiterate that the *Testone* and *Allstate Ins. Co.* decisions relied on the "physical contact" test when determining whether the language used in uninsured and underinsured motorist *policy provisions* entitled the claimant to coverage. In this case, the defendant argues that we must also use the "physical contact" test for determining whether the term "occupying" as used in § 38a-336 (f) applies to the plaintiff.

The plaintiff, however, urges adoption of the broader "use and proximity" test. As the name implies, under this test, "judges usually examine the facts to determine (1) whether the injury occurred while the claimant was in a zone or area that was within reasonable proximity to the insured vehicle, or (2) whether the claimant was

injured while engaged in a task related to the operation, maintenance, or use of the vehicle. If either of these conditions is found to exist, judges usually conclude that claimants are entitled to coverage." 1 A. Widiss, supra, § 5.2, p. 238. Underlying the expansive interpretation of coverage terms embodied by this approach are (1) the rule of construction that where terms are ambiguous the policy is to be construed against the insurer and liberally in favor of the insured, and (2) the policy choice of maximizing statutorily mandated uninsured and underinsured motorist coverage. Id., 260.

We decline the invitation to adopt the "use and proximity" test for three reasons. First, in consideration of the common meaning of the word and the *more* expansive definitions provided in § 38a-363 (c), we conclude that "occupying" as used in § 38a-336 (f) is *not* ambiguous. Second, as discussed in part I, we conclude that the legislature expressed its policy decision regarding the scope of uninsured and underinsured motorist coverage available to employees when it enacted § 38a-336 (f), which expressly limits such coverage to those employees injured while "occupying" a covered vehicle. An expansive interpretation of "occupying" would undermine the legislature's declaration of its intent regarding the interplay of the exclusivity provision of the workers' compensation laws and the uninsured motorist laws. Third, we are compelled to follow our Supreme Court's express approval of the "physical contact" test in *Testone* v. *Allstate Ins. Co.*, supra, 165 Conn. 134, despite the fact that it was applied in the context of interpreting policy rather than statutory language.

In this case, there is no dispute that the plaintiff was not physically touching the covered vehicle and, in fact, was in the middle of an intersection directing traffic when struck. As such, the plaintiff cannot be said to have been occupying a covered vehicle under the com-

monly approved usage of the term and in light of the "physical contact" test. We conclude that the court properly determined that the exception to the workers' compensation exclusivity rule provided by § 38a-336 (f) does not apply to the plaintiff because he was not occupying a covered motor vehicle within the meaning of the statute.

## III

Finally, we address the plaintiff's claim that as a named insured under his employer's policy, he is not barred from collecting underinsured motorist coverage by the workers' compensation exclusivity provision. Specifically, he argues that pursuant to *Agosto* v. *Aetna Casualty & Surety Co.*, supra, 239 Conn. 549, and *Hansen* v. *Ohio Casualty Ins. Co.*, supra, 239 Conn. 537, the language in the "who is an insured" provision of the uninsured and underinsured motorist endorsement is ambiguous and therefore must be construed to provide coverage to the plaintiff as an insured, regardless of whether he was occupying a covered vehicle.[14] The plaintiff contends that although he collected workers' compensation benefits from his employer, the exclusivity provision contained in § 31-284 is inapplicable because he is claiming benefits as an insured "against his own insurer" and not merely against his employer's insurer.[15] Although the defendant concedes that the

[14] In its articulation, the court addressed this issue for the first time and concluded that pursuant to *Agosto* v. *Aetna Casualty & Surety Co.*, supra, 239 Conn. 549, and *Hansen* v. *Ohio Casualty Ins. Co.*, supra, 239 Conn. 537, the policy language in this case is ambiguous and that therefore, the plaintiff is entitled to coverage. The court then reversed its previous ruling granting the defendant's motion for summary judgment. An articulation is not an opportunity for a trial court to substitute a new decision. See *Fantasia* v. *Milford Fastening Systems*, 86 Conn. App. 270, 284, 860 A.2d 779 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005). We must now determine whether the court's initial ruling in favor of the defendant was proper in light of *Agosto* and *Hansen*.

[15] In addition, at oral argument, the plaintiff claimed that the exclusivity provision is inapplicable in this case because pursuant to General Statutes § 31-284 (a), the policy endorsements extending coverage to volunteers and employees as insureds represented an agreement between the plaintiff and

plaintiff is a named insured, it argues that the workers' compensation exclusivity provision nonetheless bars the plaintiff's claim for underinsured motorist coverage under his employer's policy unless the exception provided by § 38a-336 (f) is applicable. We agree with the defendant.

In *Hansen*, the plaintiff's decedent, who was killed while riding a snowmobile that collided with an underinsured motor vehicle, was a shareholder and the sole paid employee of a closely held corporation. *Hansen v. Ohio Casualty Ins. Co.*, supra, 239 Conn. 538–40. Our Supreme Court concluded that the commercial automobile liability insurance policy issued to the corporation which contained *individual* oriented language in the policy along with *family member* oriented language in the uninsured motorist endorsement "injected confusion and uncertainty into the coverage afforded by the policy," and therefore was ambiguous. Id., 548. The court resolved the ambiguity against the insurer and held that the plaintiff was entitled to coverage under the uninsured motorist endorsement. Id., 548–49.

In *Agosto*, which was a companion case of *Hansen*, the plaintiff's decedent, a state police trooper, was killed during a traffic stop when he was struck by another vehicle while outside of his police cruiser. *Agosto v. Aetna Casualty & Surety Co.*, supra, 239 Conn. 550. Although the policy in the case was issued to a state governmental entity, as opposed to a corporation, our Supreme Court saw no reason to distinguish the

the district to provide additional compensation beyond the workers' compensation remedies. In relevant part, § 31-284 (a) provides that "nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation." We decline to address this issue on the basis of the long settled rule that this court does not consider claims that are raised for the first time at oral argument and that are, consequently, inadequately briefed. See *Blatchley* v. *Mintz*, 81 Conn. App. 782, 785 n.2, 841 A.2d 1203, cert. denied, 270 Conn. 901, 853 A.2d 519 (2004).

case from *Hansen* because "[t]he same problematic language exists here." Id., 552. The court stated: "On the basis of our reasoning in *Hansen*, the defendant in the present case should not have issued an uninsured motorist endorsement containing language referring to individuals and family members when the named insured was a governmental entity." Id. As in *Hansen*, the court resolved the ambiguity in the policy language against the insurer and held that the plaintiff's decedent was entitled to coverage. Id.

In this case, the uninsured and underinsured motorist endorsement included in the commercial automobile insurance policy issued to the district contains language identical to the endorsements at issue in *Hansen* and *Agosto*. The coverage provision of the endorsement states in relevant part: "We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' . . ." The "who is an insured" provision of the endorsement provides a list that includes the following: "1. You. 2. If you are an individual, any 'family member.' 3. Anyone else 'occupying' a covered 'auto' . . . ."

The plaintiff argues that we should follow *Agosto* and *Hansen*, and hold that this language, which is contained in a commercial policy issued to a fire district, is ambiguous and therefore must be construed to provide coverage to the plaintiff as an insured, regardless of whether he was occupying a covered auto. The defendant argues that this case is distinguishable from *Hansen* and *Agosto* because, unlike the insurers in those cases, the defendant conceded that the plaintiff is a named insured under the policy and did not attempt to disclaim coverage on that basis. The defendant also contends that we are not bound by *Agosto* because it has raised an argument not addressed in that case, namely, that the

plaintiff, even as a named insured, is not entitled to coverage because he cannot overcome the workers' compensation exclusivity provision.

The plaintiff argues that the claim for underinsured motorist coverage in *Agosto* should have been subject to the workers' compensation exclusivity provision contained in § 31-284 because, although not stated in the decision, it is likely that the plaintiff's decedent, a state trooper, had recovered workers' compensation benefits from his employer. The *Agosto* decision, however, does not discuss the workers' compensation exclusivity provision or the exception contained in § 38a-336 (f). The plaintiff argues that this absence of discussion suggests that the decedent's status as a named insured overrode any need to question whether he was barred by the exclusivity provision. We cannot assume, however, that the exclusivity provision is not a bar to the plaintiff in this case simply because our Supreme Court did not address the issue in a factually similar case.

The plaintiff applied for and received workers' compensation benefits from the district for his injuries. The plaintiff is now claiming coverage under his employer's insurance. He argues that, pursuant to *Hansen* and *Agosto*, he qualifies as an insured under the underinsured motorist endorsement and that, pursuant to the employee coverage extension endorsements, he qualifies as a named insured under the liability coverage portion of the policy. Thus, the issue is whether, absent an exception, § 31-284 bars the plaintiff from claiming underinsured motorist coverage under his employer's policy despite the fact that he is a named insured. We conclude that it does.

Section 31-284 (a) provides in relevant part: "All rights and claims between an employer who complies with the [workers' compensation insurance] requirements of subsection (b) of this section and employees,

or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

Although the policy provides protection for the plaintiff, the policy is not, as he argues, his own insurance policy. It is his employer's policy. It is irrelevant that he is a named insured under the policy. Section 31-284 bars all claims made by employees against their employers for injuries sustained in the course of employment other than claims for remedies provided by the Workers' Compensation Act. Thus, the exclusivity provision bars the plaintiff from claiming underinsured motorist coverage under his employer's policy, unless an exception applies. As discussed in part I, § 38a-336 (f) provides a limited exception to the exclusivity provision for those employees "injured while occupying a covered motor vehicle in the course of employment . . . ." In part II, however, we concluded that this exception does not apply to the plaintiff under the facts of this case. We conclude that the workers' compensation exclusivity provision bars the plaintiff from collecting underinsured motorist coverage under his employer's policy, even though the plaintiff is a named insured.

The judgment is affirmed.

In this opinion the other judges concurred.